UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DAVID MCMORRIS,

       Plaintiff,                              Civil Action No.
                                                        14-CV-11134

vs.

                                                        Honorable Patrick J. Duggan

SERGEANT RUSSELL FRIES,

       Defendant.
_____/

**<u>OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT and DISMISSING PLAINTIFF'S
CLAIM UNDER THE MICHIGAN CONSTITUTION AND CLAIM FOR
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

## I.  INTRODUCTION

This is a civil rights case brought pursuant to 42 U.S.C. § 1983.  Plaintiff John David McMorris alleges that he was arrested for carrying a concealed weapon without probable cause by Defendant Sergeant Russell Fries of the Flint Township Police Department in violation of his rights under the Fourth Amendment to the United States Constitution.  As a result of the arrest, Plaintiff spent approximately two days in jail.  Plaintiff also brings pendent state law claims under the Michigan Constitution and for false arrest and intentional infliction of emotional distress.

The matter is now before the Court on Sgt. Fries' motion for summary judgment. Plaintiff filed a response but Sgt. Fries did not file a reply.[1] Upon review of the record and briefs, the Court concludes that oral argument would not aid the decisional process. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court will deny Sgt. Fries' motion. However, the Court will summarily dismiss Plaintiff's claim under the Michigan Constitution and his claim for intentional infliction of emotional because he has abandoned those claims.

## II. BACKGROUND

The incident leading to this lawsuit took place in the late hours of Christmas Eve and the early hours of Christmas Day 2013. That night, Sgt. Fries was on duty in a marked police cruiser and responding to a request to check the welfare of the occupants of a trailer home. Fries Dep. at 17 (ECF No. 13-2). En route to the trailer home, Sgt. Fries first observed Plaintiff, who was walking by himself in "quite cold" temperatures near the snow-covered gravel shoulder of a road adjacent to Flint's Bishop International Airport. *Id.* at 19-20. As he drove past Plaintiff, Sgt. Fries activated his high beam lights and "look[ed] at Plaintiff [from] head to toe." *Id.* at 42. Sgt. Fries testified in his deposition that he "did not see any weapon on [Plaintiff]" and that "[i]n [his] opinion [Plaintiff] wasn't armed at that time." *Id.* at 21. Although Sgt. Fries "thought it was suspicious that there's a guy

---

[1] However, the Court granted the parties' request to file one supplemental brief each, both limited to five pages in length.

2

walking out in the cold near the airport," he did not stop Plaintiff because "[the] welfare check took precedence." *Id.* at 20.

After completing the welfare check, Sgt. Fries returned to the area in which he earlier observed Plaintiff, intending to "give him a ride home." *Id.* at 21. The record contains audio and video footage of the events that occurred next, captured by the camera in Sgt. Fries' cruiser.[2] As Sgt. Fries approached Plaintiff in his cruiser, Plaintiff immediately raised his arms in the air and then turned his body so that his right profile was facing in Sgt. Fries' direction. As Plaintiff raised his arms higher, the bottom of his jacket inched upward, exposing his waistline and revealing a gun and holster attached to the right side of Plaintiff's waist. On the one hand, Sgt. Fries testified that he could not discern that Plaintiff was armed until Plaintiff raised his arms in the air, causing his jacket to lift in a manner that exposed his waistline. Fries Dep. at 23-24. On the other hand, Plaintiff testified that his gun was fully visible that night and not covered by his jacket: "My coat didn't cover my weapon." Pl. Dep. at 90-92. The video footage does not resolve this factual dispute. Due to the distance, camera angle, and glare, it is not clear from the footage whether, or to what extent, the gun was visible before Plaintiff lifted his arms. In addition, the record does not contain video footage of Sgt. Fries'

---

[2] The background facts contained in this paragraph and the next paragraph that are not supported by a citation to the record are gleaned from the video footage.

3

drive to the welfare check earlier in the evening during which Sgt. Fries first observed Plaintiff.

Sgt. Fries exited his cruiser and approached Plaintiff on foot. Sgt. Fries asked Plaintiff if he had a concealed pistol license. Plaintiff responded that he did not, but stated that he was legally carrying the gun pursuant to Michigan's open carry law. Sgt. Fries then told Plaintiff that his gun was not visible earlier in the evening because his jacket was covering it. Although Plaintiff at first apologized and told Sgt. Fries that he "did not know his coat was covering [his gun]," Plaintiff was adamant later, while seated in Sgt. Fries' cruiser, that his gun remained visible over his jacket the entire evening. However, Sgt. Fries insisted that he could not see Plaintiff's gun until Plaintiff raised his arms in the air, exposing his waistline, and placed Plaintiff under arrest for carrying a concealed weapon in violation of Mich. Comp. Laws § 750.227, which makes it unlawful to carry a concealed pistol without a license.

Plaintiff remained in jail until the afternoon of December 26, 2013; no charges were brought against Plaintiff at that time. However, charges were brought against Plaintiff for violating § 750.227 on July 28, 2014 – about seven months after the incident and five and a half months after Plaintiff commenced this lawsuit. *See People v. McMorris*, No. 14-036112 (Genesee Cnty. Cir. Ct.). The criminal case against Plaintiff proceeded to trial. After the prosecution rested its

4

case-in-chief, Plaintiff moved for a directed verdict of acquittal pursuant to Michigan Court Rule 6.419(A), which requires a court to direct a verdict for the accused where "the evidence is insufficient to sustain a conviction." The court granted the motion because the evidence adduced at trial did not demonstrate that Plaintiff's gun was concealed when he was stopped by Sgt. Fries and the prosecution failed to offer any evidence demonstrating that Plaintiff was carrying a gun earlier in the evening. Because there was no evidence that Plaintiff possessed a gun when Sgt. Fries observed Plaintiff en route to the welfare check, and no evidence that the gun Plaintiff possessed later was concealed, the state court directed a verdict in favor of Plaintiff and dismissed the criminal charges against him.[3]

Plaintiff filed this lawsuit in state court in February 2014, and the case was subsequently removed to this Court. In his original complaint, Plaintiff named only the Charter Township of Flint as a Defendant. On July 25, 2014, Plaintiff filed an amended complaint adding Sgt. Fries as a Defendant. Plaintiff sues Sgt. Fries in both his individual and official capacities. On August 6, 2014, the parties stipulated to the dismissal of the Charter Township of Flint without prejudice.

---

[3] The state court explained its reasons for granting the motion from the bench and issued a written order memorializing the result. The record does not contain a copy of the transcript of the portion of the proceedings during which the judge explained his reasoning for granting the motion. However, this Court has obtained the transcript in audio form from the court in which the proceedings took place.

Sgt. Fries filed the present motion for summary judgment on August 15, 2014. Plaintiff filed a response on September 5, 2015, but Sgt. Fries did not file a reply. On September 19, 2014, at the request of the parties, the Court stayed these proceedings pending the outcome of the criminal case brought against Plaintiff. On June 8, 2015, the Court lifted the stay after the parties notified the Court that the criminal case had concluded. Shortly thereafter, the Court permitted the parties to file supplemental briefs at their request. Plaintiff's supplemental brief was due by June 23, 2015, and Sgt. Fries' supplemental brief due within fourteen days of the date on which Plaintiff filed his brief. Inexplicably, Plaintiff has failed to file a supplemental brief, and the time to do so has now expired. The matter is now ready for decision.

### III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

## IV. ANALYSIS

Although the amended complaint includes claims under the Michigan Constitution and for intentional infliction of emotional distress, Plaintiff concedes that those claims are not viable. *See* Pl. Resp. to Mot. for Summ. J. at 9, 11 (ECF No. 18). Accordingly, the Court will summarily dismiss those claims, leaving only Plaintiff's constitutional claim for unlawful arrest under § 1983 and his state law claim for false arrest.

The viability of both remaining claims hinge on the answer to one crucial question: Did Sgt. Fries have probable cause to arrest Plaintiff for carrying a concealed weapon in violation of Mich. Comp. Laws § 750.227? *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) ("In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause."); *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351, 362 (2003) ("To prevail on a claim of false arrest . . . [under Michigan law], a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause."). As stated by the Supreme Court, "'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable

7

caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632 (1979). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

As stated, Plaintiff was arrested for carrying a concealed pistol in violation of Mich. Comp. Laws § 750.227. In pertinent part, that statute makes it unlawful for a person to "carry a pistol concealed on or about his or her person . . . without a license to carry the pistol as provided by law." Mich. Comp. Laws § 750.227(2). Thus, to be convicted under § 750.227(2), the prosecution must prove three elements: (1) the defendant carried a pistol on or about his or her person, (2) the pistol was concealed, and (3) the defendant did not have a license to carry a concealed pistol. *See People v. Davenport*, 89 Mich. App. 678, 682, 282 N.W.2d 179, 181 (1979). "[A] weapon is concealed when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life." *People v. Jones*, 12 Mich. App. 293, 296, 162 N.W.2d 847, 849 (1968). "The issue of concealment depends upon the particular circumstances present in each case and

whether the weapon was concealed from ordinary observation is a question for the trier of fact to determine." *Id.* at 296-97, 162 N.W.2d at 849.

A factual dispute precludes determination as a matter of law whether Sgt. Fries had probable cause to arrest Plaintiff for carrying a concealed pistol. Sgt. Fries observed Plaintiff on two occasions on the evening in question. During his first encounter with Plaintiff en route to the welfare check, Sgt. Fries testified that, "in [his] opinion," Plaintiff "wasn't armed at that time." Fries. Dep. at 21. Therefore, Sgt. Fries did not have probable cause to arrest Plaintiff for carrying a concealed weapon at that time.

Sgt. Fries observed Plaintiff again later in the evening after completing the welfare check. According to Sgt. Fries' version of the events, Plaintiff's gun was not initially visible because it was covered by his jacket, and did not become visible until Plaintiff lifted his arms, thereby exposing his waistline and revealing his gun and holster. If the factfinder credits Sgt. Fries' testimony, it could reasonably conclude that Sgt. Fries had probable cause to arrest Plaintiff for carrying a concealed weapon. *Cf. People v. Dorsey*, No. 235907, 2003 WL 231314, at *3 (Mich. Ct. App. Jan. 31, 2003) (gun was concealed where it "only became visible after the police officer moved defendant's sweater").[4] However,

---

[4] However, the Court notes that even if a reasonable factfinder credited Sgt. Fries' testimony, it could still conclude that Sgt. Fries did not have probable cause to arrest Plaintiff if the factfinder believes that the interaction between Sgt. Fries and

Plaintiff testified that his jacket did not cover his gun and that his gun remained visible during the encounter. If the factfinder credits Plaintiff's testimony, it could reasonably conclude that Sgt. Fries lacked probable cause to arrest Plaintiff for carrying a concealed weapon. As stated, the video footage does not resolve the factual dispute between Sgt. Fries and Plaintiff whether the gun was visible before Plaintiff lifted his arms. Therefore, the Court cannot determine as a matter of law whether Sgt. Fries had probable cause to arrest Plaintiff for carrying a concealed pistol, as the answer depends on whose version of the events is credited by the factfinder.

    Sgt. Fries argues that he had probable cause to arrest Plaintiff for carrying a concealed pistol because Plaintiff "admitted that he did not know that his coat was covering his gun and apologized for the same." Def. Mot. for Summ. J. at 9 (ECF No. 13). Sgt. Fries is referring to a statement that Plaintiff made early-on in their encounter, which was captured by the video footage of the incident. Sgt. Fries told Plaintiff that his gun was not visible when he observed Plaintiff earlier, en route to

---

Plaintiff at the moment Sgt. Fries failed to observe Plaintiff's gun was not similar to a "casual[] observ[ation]" made "in the ordinary and usual associations of life." *Jones*, 12 Mich. App. at 296, 162 N.W.2d at 849. *See, e.g.*, *People v. Kincade*, 61 Mich. App. 498, 504-05, 233 N.W.2d 54, 58 (1975) (element of concealment not established where the interaction during which the officer was unable to observe a gun in plain view was not similar to casual observation made in the ordinary association of life inasmuch as the interaction occurred suddenly, in the dark, and lasted only an instant). At the time Sgt. Fries failed to observe Plaintiff with a gun, it was dark outside and Sgt. Fries was still in his cruiser, some distance away from where Plaintiff was standing.

the welfare check; Plaintiff responded that he "did not know the front of his coat was covering it, sir, I'm very sorry." Sgt. Fries contends that, in light of this purported admission and apology, Plaintiff "cannot now dispute Sgt. Fries' testimony that Plaintiff's coat was covering the gun, and that Sgt. Fries could not observe the weapon until Plaintiff raised his hands." *Id.*

In asserting this argument, Sgt. Fries relies on just one statement made by Plaintiff during the encounter and overlooks the totality of his pre-arrest dialogue with Plaintiff. Plaintiff was adamant throughout his encounter with Sgt. Fries that his gun was not concealed. In particular, before Plaintiff was placed under arrest, Sgt. Fries insisted that Plaintiff's gun was covered by his jacket, but Plaintiff repeatedly rebuffed that assertion, stating multiple times that his gun always remained visible. Although a reasonable factfinder could interpret Plaintiff's earlier statement that he "did not know" that his jacket was covering his gun as inconsistent with his subsequent statements that his jacket was not covering his gun, and credit the earlier statement over the later statements, construing the facts in the light most favorable to Plaintiff, as the Court must at the summary judgment stage, the Court believes that a reasonable factfinder could view Plaintiff's statements as consistent and accept Plaintiff's position that he did not admit that his gun may have been concealed. Plaintiff's demeanor throughout his encounter with Sgt. Fries was extremely polite, agreeable, and cooperative, and a reasonable

11

factfinder could conclude, based on his demeanor throughout the encounter, that his earlier statement that he "did not know" that his jacket was covering his gun stemmed from Plaintiff's desire to cooperate and is not a concession that Plaintiff believed that his jacket may have been covering his gun.  In sum, considering the totality of the pre-arrest dialogue between Plaintiff and Sgt. Fries in the light most favorable to Plaintiff, the Court concludes that a reasonable factfinder could find that Plaintiff's statements during the encounter are not inconsistent with his position that the gun remained visible and do not preclude Plaintiff from arguing that the gun was visible over his jacket.

Additionally, Sgt. Fries points out that Plaintiff was carrying the gun in a "close quarters concealment holster," a holster that Sgt. Fries asserts is meant to conceal a gun.  However, Sgt. Fries has not offered evidence showing that a gun cannot be carried openly in the type of holster used by Plaintiff.  Therefore, Plaintiff's use of the holster does not support Sgt. Fries' position that he had probable cause to believe that Plaintiff's gun was concealed.

Finally, Sgt. Fries argues that he is entitled to qualified immunity with regard to Plaintiff's § 1983 claim for unlawful arrest and governmental immunity with regard to Plaintiff's state law claim for false arrest.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of

the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). To resolve claims of qualified immunity, the Court applies a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S. Ct. 808, 815-16 (2009) (citation omitted). Thus, to defeat Sgt. Fries' assertion of qualified immunity, "Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

Construing the evidence in the light most favorable to Plaintiff, Plaintiff has demonstrated a violation of his Fourth Amendment right to be free from unlawful arrest. In viewing the facts in the light most favorable to Plaintiff, the Court credits Plaintiff's testimony that his gun was carried in plain view and not covered by his jacket. Accepting Plaintiff's version of the facts, Sgt. Fries lacked probable cause to arrest Plaintiff for carrying a concealed pistol under Mich. Comp. Laws § 750.227(2). Therefore, Plaintiff has satisfied the first element under the *Pearson* framework.

Plaintiff has also satisfied the second element of the *Pearson* framework, requiring that the right allegedly violated be clearly established at the time of the alleged violation. A right is clearly established if "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Long before the incident here occurred in December 2013, "the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1990). Therefore, Plaintiff has satisfied the second element under the *Pearson* framework.

Sgt. Fries is also not entitled to governmental immunity with regard to Plaintiff's state law false arrest claim. A government official accused of an intentional tort such as false arrest is entitled to governmental immunity under Michigan law if he or she demonstrates the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

14

*Odom v. Wayne Cnty.*, 482 Mich. 459, 480, 760 N.W.2d 217, 228 (2008) (citing Mich. Comp. Laws § 691.1407). Regarding the first element, "the intentional use or misuse of a badge of governmental authority for a purpose unauthorized by law is not the exercise of a governmental function." *Smith v. Dep't of Public Health*, 428 Mich. 540, 611, 410 N.W.2d 749, 780 (1987). And regarding the second element:

> Good faith is the absence of malice, or wanton or reckless disregard for the rights of others. An officer's conduct is wanton misconduct when his actions show indifference to whether harm will occur. Good faith is subjective. Defendant's honest belief he is acting in good faith is protection from liability.

*Broadnax v. Double*, No. 12-CV-12744, 2013 WL 5353243 (E.D. Mich. Sept. 24, 2013) (citations omitted). Accepting Plaintiff's version of the facts, Sgt. Fries arrested Plaintiff without probable cause to believe that Plaintiff had committed the offense for which he was arrested. Taking the facts in the light most favorable to Plaintiff, a reasonable factfinder could infer bad faith from an arrest made without probable cause, defeating the first and second elements of the *Odom* framework. Therefore, because a fact issue remains regarding to the first and second elements of the *Odom* framework, Sgt. Fries is not entitled to governmental immunity with regard to Plaintiff's false arrest claim at this juncture.

## V. CONCLUSION

This case presents a genuine issue of material fact precluding summary judgment. Plaintiff says that he carried his gun in plain view; Sgt. Fries says that Plaintiff's gun was concealed. The available video footage does not resolve the dispute. Accordingly, Sgt. Fries' motion for summary judgment is **DENIED**. However, Plaintiff's state law claims under the Michigan Constitution and for intentional infliction of emotional distress are **DISMISSED**. This case will proceed on Plaintiff § 1983 claim for unlawful arrest and his state law claim for false arrest.

**SO ORDERED**.

Date: June 25, 2015

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:
Craig L. McAra, Esq.
G. Gus Morris, Esq.